UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DANA SMITH,

              Plaintiff,

    -v-

RICHARD ARROWOOD, CHARLES
CARROLL, and CHRISTIAN
DEVINNEY,

              Defendants.
_____

**DECISION AND ORDER**

6:21-CV-6318 EAW

## <u>INTRODUCTION</u>

Plaintiff Dana Smith ("Plaintiff") filed this action seeking relief under 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971), for violations of his Fourth and Fourteenth Amendment rights and other state law claims. (Dkt. 1). Before the Court is a motion to dismiss filed by defendants Charles Carroll ("Defendant Carroll") and Christopher DeVinney ("Defendant DeVinney") (collectively, "the Moving Defendants"). (Dkt. 39). Because the second amended complaint fails to state a cognizable *Bivens* claim against the Moving Defendants, the motion to dismiss is granted.

**DISCUSSION**

I.    **Factual Background**

The following facts are taken from Plaintiff's second amended complaint (Dkt. 34). As required on a motion to dismiss, the Court treats Plaintiff's factual allegations as true and must draw all inferences in Plaintiff's favor.

On June 19, 2020, at approximately 8:00 p.m., the Moving Defendants, along with defendant Richard Arrowood ("Defendant Arrowood") and other law enforcement officers, arrived at a private residence at 1755 Falls Street, in the City of Niagara Falls, New York. (*Id.* at ¶ 8). Plaintiff alleges that these law enforcement officers were part of a United States Marshals Service task force[1] charged with executing fugitive warrants and they intended to take Plaintiff into custody. (*Id.* at ¶¶ 5, 6 & 9).

Defendant Arrowood approached the residence and shouted to Plaintiff that he wanted to speak to him. (*Id.* at ¶ 9). None of the officers were wearing uniforms or advised Plaintiff that they were police officers. (*Id.*). Plaintiff retreated into the residence and attempted to close the door, but Defendant Arrowood and Defendant Carroll forced their way into the residence and tried to physically subdue Plaintiff. (*Id.* at ¶ 10). Defendant DeVinney endeavored to breach the front door along with Defendant Arrowood and

_____

[1]    Defendant Carroll and Defendant DeVinney are alleged to be "law enforcement officers acting under color of legal authority of the United States Marshall's [sic] NY/NJ Regional Fugitive Warrant Task Force" (Dkt. 34 at ¶ 5), and they are represented in this action by the United States Attorney's Office. By contrast, Defendant Arrowood is alleged to be a City of Rochester Police Department officer assigned to the task force who was acting "under color of state law" (*id.* at ¶ 6), and he is represented in this action by the City of Rochester Law Department.

Defendant Carroll, and he was in a position to stop them but did not attempt to do so.  (*Id.* at ¶ 11).  Once inside, Defendant Arrowood shot Plaintiff more than once with a .45 caliber handgun at point-blank range.  (*Id.* at ¶ 14).  The gunshots caused Plaintiff serious injuries including two bullet-entry wounds, significant blood loss, injury to his diaphragm and spleen, multiple broken bones, a collapsed lung, and nerve damage.  (*Id.*).  Defendant Carroll and Defendant Arrowood, with the assistance of other unnamed members of the task force team who entered through the back door of the residence, dragged Plaintiff out of his residence and into the yard.  (*Id.*).

Plaintiff alleges that there was neither an arrest nor search warrant authorizing the entry into his residence and his arrest.  (*Id.* at ¶ 18).  Likewise, no defendant sought permission to enter the home.  (*Id.* at ¶ 13).

Plaintiff asserts a first cause of action against the Moving Defendants and Defendant Arrowood for violation of his Fourth Amendment rights and a second cause of action for assault against Defendant Arrowood for violation of his Fourth and Fourteenth Amendment rights.  Plaintiff's claim against Defendant Carroll arises from Defendant Carroll's forced entry into Plaintiff's residence without a warrant and Plaintiff also asserts that both Defendant Carroll and Defendant DeVinney failed to intervene to prevent Defendant Arrowood from shooting him.

## II.  Procedural Background

Plaintiff commenced the instant action on April 14, 2021, against the Moving Defendants and Defendant Arrowood, as well as additional defendants employed by federal and local authorities who were allegedly involved in the incident.  (Dkt. 1).  After

initial motion practice, on August 31, 2022, the Court issued a Decision and Order dismissing many of the claims and defendants, but granting Plaintiff leave to amend his complaint as against Defendant Arrowood, Defendant Carroll, and Defendant DeVinney. (Dkt. 33).  Familiarity with that Decision and Order is assumed for purposes of this Decision and Order.

On September 19, 2022, Plaintiff filed his second amended complaint.  (Dkt. 34). On October 11, 2022, Defendant Carroll and Defendant DeVinney filed the instant motion to dismiss.  (Dkt. 39).  On October 17, 2022, Defendant Arrowood filed his answer to the second amended complaint.  (Dkt. 41).  On November 10, 2022, Plaintiff filed a response in opposition to the motion to dismiss.  (Dkt. 43).  On November 17, 2022, Defendant Carroll and Defendant DeVinney filed their reply.  (Dkt. 44).

## DISCUSSION

## I.    Legal Standard

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the [pleading], documents attached to the [pleading] as exhibits, and documents incorporated by reference in the [pleading]."  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the [claimant]."  *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility

when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a [pleading] attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a [claimant]'s obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the [pleading]'s '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

## II.   Defendant Carroll and Defendant DeVinney's Motion to Dismiss

Defendant Carroll and Defendant DeVinney move to dismiss Plaintiff's second amended complaint, arguing that Plaintiff fails to state a *Bivens* claim upon which relief may be granted because the recent United States Supreme Court decision of *Egbert v. Boule*, __ U.S. __, 142 S. Ct. 1793 (2022), forecloses a constitutional damages remedy against these defendants for the claims asserted in this case. The Court agrees.[2]

---

[2]      Plaintiff argues that Defendant Carroll and Defendant DeVinney's motion to dismiss his second amended complaint seeks to reargue matters that were decided in the Court's prior Decision and Order on the previously filed motions to dismiss (Dkt. 33) and is essentially a motion to reconsider (Dkt. 43 at 2-3). However, as noted by Defendant Carroll and Defendant DeVinney, in the prior Decision and Order, the Court expressly stated that the question of whether Plaintiff had stated a proper claim under *Bivens* was not before it and no opinion as to the merit of such an argument was issued. (Dkt. 33 n. 7 ("While *Bivens* provides a limited remedy in only certain narrowly prescribed situations,

### A.  Limitations on *Bivens* Claims

While 42 U.S.C. § 1983 "entitles an injured person to money damages if a state official violates his or her constitutional rights," Congress has not "create[d] an analogous statute for federal officials.  Indeed, in the 100 years leading up to *Bivens,* Congress did not provide a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the Federal Government."  *Ziglar v. Abbasi*, 582 U.S. 120, 130 (2017).  "In *Bivens*, the Court held that it had authority to create 'a cause of action under the Fourth Amendment' against federal agents who allegedly manacled the plaintiff and threatened his family while arresting him for narcotics violations."  *Egbert*, 142 S. Ct. at 1802 (quoting *Bivens*, 403 U.S. at 397)).  "Over the following decade, the Court twice again fashioned new causes of action under the Constitution—first, for a former congressional staffer's Fifth Amendment sex-discrimination claim, *see Davis v. Passman*, 442 U.S. 228 (1979); and second, for a federal prisoner's inadequate-care claim under the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14 (1980)."  *Id.*

Since deciding *Carlson* in 1980, additional causes of action arising under *Bivens* have not been implied.  In *Ziglar*, the Supreme Court explained that "expanding the *Bivens* remedy is now a disfavored judicial activity," and that the key question to be asked "is who should decide whether to provide for a damages remedy, Congress or the courts?"  582

---

the Federal Defendants do not argue for purposes of the instant motion that the allegations in Plaintiff's amended complaint could not support a cognizable *Bivens* claim.  Because the matter is not before the Court, nothing in this Decision and Order should be construed to resolve the question as to whether a *Bivens* claim lies as to all of Plaintiff's asserted constitutional claims.  *See generally Egbert v. Boule*, __ U.S. __, 142 S. Ct. 1793, 1800 (2022).").

U.S. at 135 (quotations omitted).  The *Ziglar* Court further explained that the *Bivens* remedy may not be extended into a new context if there are "special factors counselling hesitation in the absence of affirmative action by Congress," *id*. at 136 (citation omitted), and that a context is new "[i]f the case is different in a meaningful way from previous *Bivens* cases" decided by the Supreme Court, *id*. at 139.  Examples of where a case may be different include "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider."  *Id*. at 139-40.  Ultimately, "if there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy[,] the courts must refrain from creating [one]."  *Id*. at 137.

More recently, in *Egbert*, the plaintiff brought a *Bivens* action against a United States Border Patrol agent, alleging that the agent violated his Fourth Amendment rights through the use of excessive force and violated his First Amendment rights to protection from retaliation.  142 S. Ct. at 1802.  The Supreme Court reiterated that "[e]ven a single sound reason to defer to Congress is enough to require a court to refrain from creating . . . a [*Bivens*] remedy."  *Id.* at 1803 (quotation omitted).  In other words, "[i]f there is a rational reason to think" that the answer to the question "who should decide whether to provide for a damages remedy, Congress or the Courts?" is Congress, "as it will be in most every case," then "no *Bivens* action may lie."  *Id*. (citation omitted).  The Supreme Court explained

further that "if [it] were called to decide *Bivens* today, [it] would decline to discover any implied causes of action in the Constitution." *Id*. at 1803.

The *Egbert* decision further expounded on the applicable test, indicating that while prior cases describe a court's analysis as a two-step process consisting of an inquiry into whether the case presents "a new *Bivens* context" and whether there are "special factors" indicating that the judiciary is less equipped than Congress to determine if the action should proceed, "those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id*.  The Court held that although the plaintiff presented a Fourth Amendment claim, as in *Bivens*, "superficial similarities are not enough to support the judicial creation of a cause of action." *Id.* at 1805; *see also Smith v. Garcia*, No. 21-CV-578 NGG RJR, 2022 WL 17852393, at *7 (E.D.N.Y. Dec. 22, 2022) ("While both cases concern potential violations of an individual's Fourth Amendment rights, the Supreme Court has made clear that a claim brought under the same constitutional provision as a previously successful *Bivens* claim may still be found to arise in a new context."); *Cohen v. United States*, No. 21-CV-10774 (LJL), 2022 WL 16925984, at *6 (S.D.N.Y. Nov. 14, 2022) ("[T]he *Egbert* Court made clear that, effectively, [the special factors inquiry] operates as a bar to a *Bivens* claim in all cases except, perhaps, those involving Fourth, Fifth and Eighth Amendment claims factually indistinguishable from *Bivens*, [*Davis*], or *Carlson*.").

**B.  Plaintiff's amended complaint does not state cognizable *Bivens* claims.**

As noted, one assessment for the Court to consider in assessing the availability of a *Bivens* remedy is whether the case presents "a 'new context' or involves a 'new category' of defendants."  *Hernandez v. Mesa*, __ U.S. __, 140 S. Ct. 735, 743 (2020) (quoting *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68 (2001)).  The "understanding of a 'new context'" is construed broadly to include any context that is "different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]."  *Id.*; *see also Karman v. U.S. Customs and Border Prot.*, No. 823CV345 (LEK/CFH), 2023 WL 5806313, at *3 (N.D.N.Y. Sept. 7, 2023) ("Yet, '[b]ecause implied causes of action are disfavored, the Court has been reluctant to extend *Bivens* liability to any new context or new category of defendants.'" (quoting *Krul v. Brennan*, 501 F. Supp. 3d 87, 101 (N.D.N.Y. 2020) (internal quotation marks omitted))).

Here, Defendant Carroll and Defendant DeVinney argue that the claims in Plaintiff's amended complaint are asserted against a new category of defendants, noting that unlike the narcotics agents in *Bivens*, Defendant Carroll and Defendant DeVinney were members of a United States Marshals Service fugitive task force.  Plaintiff argues that the distinction between federal agencies is without significance, and that the "constitution applies equally to all federal law enforcement officers."  (Dkt. 43 at 3).  Not only does Plaintiff cite no legal authority for his contention, but numerous courts applying *Egbert* have found similar distinctions meaningful and sufficient to support a conclusion that a claim presented a new context.  *See Karman,* 2023 WL 5806313, at *6 ("Following the Supreme Court's decisions in *Hernandez* and *Egbert*, district courts have concluded that a

Bivens action does not exist for claims against federal immigration officials."); *Campbell v. City of Yonkers*, No. 19 CV 2117 (VB), 2023 WL 4867459, at *8 (S.D.N.Y. July 31, 2023) (finding meaningful difference between plaintiff's claim and *Bivens* where "the officers involved in *Bivens* were federal drug enforcement agents, whereas here the officers were FBI agents, task force officers, and other local law enforcement officers"); *James v. City of Rochester*, No. 23-CV-6057DGL, 2023 WL 3356931, at *3 (W.D.N.Y. May 11, 2023) (dismissing claims against members of United States Marshals task force arising from a death occurring in the execution of an arrest warrant in light of *Egbert*); *Diaz Cruz v. United States*, No. 20-CV-891(EK)(SJB), 2023 WL 2574756, at *3 (E.D.N.Y. Mar. 20, 2023) ("Under the Supreme Court's restrictive rubric, this case plainly presents a new context.  First, Officer Santana is an ICE agent, whereas *Bivens* involved federal narcotics agents."); *Lewis v. Westfield*, 640 F. Supp. 3d 249, 250 (E.D.N.Y. 2022) ("Plaintiff's excessive-force and failure-to-intervene claims present a new *Bivens* context.  The defendants are Deputy Marshals, rather than federal narcotics agents."), *appeal docketed*, (2d. Cir. Nov. 30, 2022); *Edwards v. Gizzi*, No. 20-CV-7371 (KMK), 2022 WL 309393, at *7 (S.D.N.Y. Feb. 2, 2022) ("Additionally, 'the officers involved in *Bivens* were federal narcotics agents, an investigatory and enforcement force, whereas here, the officers [include] U.S. Marshals . . .'" (quoting *Style v. Mackey*, No. 17-CV-1691, 2020 WL 3055319, at *4 (E.D.N.Y. June 8, 2020)), *appeal docketed* (2d. Cir. March 25, 2022); *see also Clutts v. Lester,* No. 20-CV-80-CJW-KEM, 2023 WL 3901489, at *5 (N.D. Iowa June 8, 2023) ("Numerous courts have found that the position of Deputy U.S. Marshals renders claims meaningfully different."); *Senatus v. Lopez*, No. 20-CV-60818, 2022 WL

16964153, at *5 (S.D. Fla. Oct. 12, 2022) ("Defendants here were members of a fugitive task force deputized by the United States Marshals. Recently, other courts have held that where the defendants are governmental officials different than the narcotics agents in *Bivens*, affording the plaintiff relief would constitute an impressible extension of *Bivens* into a 'new context.'"), *report and recommendation adopted*, No. 20-60818-CIV, 2022 WL 16961323 (S.D. Fla. Nov. 16, 2022).

In addition, to the extent that Plaintiff asserts a failure to intervene claim (the only claim asserted against Defendant DeVinney), such a claim presents a new context and does not constitute a cognizable *Bivens* claim. *See Johnson v. Santiago*, 624 F. Supp. 3d 295, 300 (E.D.N.Y. 2022) ("As courts in this circuit have recognized, 'a claim for failure to protect based on the allegation that [Defendant] was present during the attack on Plaintiff but did not help Plaintiff or intervene' presents a new *Bivens* context." (quotation and citation omitted); *Cannenier v. Skipper-Scott*, No. 18 CIV. 2383 (LGS), 2019 WL 764795, at *5 (S.D.N.Y. Feb. 20, 2019) ("The Supreme Court has recognized only three *Bivens* contexts, none of which include failure to protect . . ."); *Martinez v. D'Agata*, No. 16 CV 44 (VB), 2019 WL 6895436, at *7 (S.D.N.Y. Dec. 18, 2019) (declining to find *Bivens* remedy for claim against federal defendants for "failure to intervene rather than the underlying excessive force violation"); *see also Looper v. Jones*, No. 22-40579, 2023 WL 5814910, at *2 (5th Cir. Sept. 8, 2023) (Even though *Carlson* created a cause of action for an asthmatic prisoner's Eighth Amendment failure to medicate claim, it did not create a cause of action for a prisoner's Eighth Amendment failure to protect or intervene claim."); *Arias v. Herzon*, No. 17-CV-516-LM, 2023 WL 4204657, at *6 (D.N.H. June 27, 2023)

("Regardless of whether a failure-to-intervene claim is an alternative theory of liability or separate constitutional violation, *Bivens* did not involve any theory that the defendant officers' failure to intervene should subject them to bystander liability under *Bivens*. And, in light of the Supreme Court's recent *Bivens* jurisprudence, this seems like a meaningful difference.").

While a closer question may be presented as to Plaintiff's Fourth Amendment claim against Defendant Carroll, who allegedly directly participated in the warrantless entry into Plaintiff's home, this claim still cannot survive an inquiry of whether there is any reason to think that Congress might be better equipped to create a damages remedy. The answer, "as it will be in most every case," *Egbert*, 142 S. Ct. at 1803, is yes. *See Challenger v. Bassolino,* No. CV1815240(KM)(MAH), 2023 WL 4287204, at *8 (D.N.J. June 30, 2023) ("The case law has recognized that these reasons counsel in particular against the wisdom of creating a new *Bivens* claim against U.S. Marshals."), *appeal docketed* (3d Cir. July 27, 2023); *Robinson v. Heinze*, No. 1:18-CV-131-TCB, 2023 WL 1774998, at *7 (N.D. Ga. Feb. 3, 2023) ("*Egbert*'s analysis applies to this case. Like border patrol agents who routinely face issues of security, the Defendants in this case were U.S. Marshals in a fugitive task force expressly carrying out a statutory mandate."), *appeal docketed* (11th Cir. March 3, 2023); *McIntyre v. United States Marshal Serv.*, No. CV181268KMMAH, 2023 WL 2447424, at *6 (D.N.J. Mar. 10, 2023) (holding that "implying a damages remedy [against United States Marshals] presents questions better fit for Congress to address").

Specifically, alternative remedies exist for aggrieved parties in Plaintiff's position and preclude *Bivens* relief here. *See Egbert*, 142 S. Ct. at 1804 ("If there are alternative

remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" (quoting *Ziglar*, 137 S. Ct. at 1858)); *Lewis*, 640 F. Supp. 3d at 254-55 ("In *Egbert*, the Supreme Court held that the existence of alternative remedial schemes is a special factor that counsels hesitation in extending *Bivens*—even with respect to extensions involving Fourth Amendment claims in 'the common and recurrent sphere of law enforcement.'" (quoting *Egbert*, 142 S. Ct. at 1805 (internal quotation marks omitted))).

In *Lewis*, the district court specifically examined the existence of alternative remedial structures for claims asserted against members of the U.S. Marshals Service:

> The Director of the Marshals Service is statutorily obligated to "supervise and direct the United States Marshals Service in the performance of its duties." 28 U.S.C. § 561(g). And by regulation, the Director "shall" investigate "alleged improper conduct on the part of U.S. Marshals Service personnel." 28 C.F.R. § 0.111(n). Anyone aggrieved by a Deputy Marshal's conduct may file a grievance alleging improper conduct. *Ibid*. A complaint form for doing so is available on the website of the Marshals Service. *See* Complaint Form Regarding United States Marshal Service Personnel or Programs, https://www.usmarshals.gov/resources/forms/complaint-form-regarding-united-states-marshals-service-personnel-or-programs (last visited 11/10/2022). In addition, by statute, the Attorney General is required to ensure that "any component" of the Department that receives a "nonfrivolous allegation of criminal wrongdoing or administrative misconduct by an employee of the Department of Justice . . . shall report that information to the Inspector General." 5 U.S.C. App. 3 § 8E(d). Congress has also authorized the Department's Inspector General to "investigate allegations of criminal wrongdoing or administrative misconduct by an employee of the Department of Justice," "refer such allegations to the Office of Professional Responsibility," or refer them to "the internal affairs office of the appropriate component" of the Department, including the USMS. *Id*. § 8E(b)(2). The Department's Inspector General provides a link on its website through which any person may report allegations of wrongdoing. *See* Hotline, https://oig.justice.gov/hotline (last visited 11/10/2022).

640 F. Supp. 3d at 254-55.  As a result, the *Lewis* court concluded that a *Bivens* claim could not stand.  *Id.* ("*Egbert* made clear that remedial schemes of this sort 'foreclose a *Bivens* action,' because '[s]o long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy.' . . . Accordingly, this Court may not extend *Bivens* to provide an implied civil damages action for Lewis's claims against Deputy Marshals in this case.").

In addition, "[t]he FTCA applies to false arrest, false imprisonment, and malicious prosecution claims when they are asserted against 'law enforcement officers of the United States Government,' where 'law enforcement officer' is defined as 'any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.'"  *Parker v. Blackerby*, 368 F. Supp. 3d 611, 618 (W.D.N.Y. 2019); *Smith*, 2022 WL 17852393, at *6 (noting that in *Egbert*, the Supreme Court "found administrative procedures almost identical to those required prior to filing an FTCA claim with a court to be a sufficient alternative remedy within the special-factors analysis"); *see also Lucas v. Garland*, No. CV 23-225WES, 2023 WL 4706818, at *8 n.11 (D.R.I. July 24, 2023) (foreclosing *Bivens* claim noting that "Plaintiff has (or could have) had) alternative remedies.  These include the USMS internal grievance procedures, as well as potential state law tort claims and any claim Plaintiff might have brought under the Federal Tort Claims Act").  It is not necessary that alternative avenues of redress provide complete relief to Plaintiff — "the court must ask only whether it, rather than the political

branches, is better equipped to decide whether existing remedies should be augmented by the creation of a new judicial remedy." *Egbert*, 142 S. Ct. at 1804 (quotation omitted).

In sum, applying the standard set forth in *Ziglar* and *Egbert*, there can be no *Bivens* remedy in the circumstances presented here. The context here is different from those limited circumstances where the Supreme Court has previously implied a cause of action under the Constitution. And, as "in most every case," *Egbert*, 142 S. Ct. at 1803, there is at least one rational reason to defer to Congress as to the availability of a damages remedy. These considerations lead inexorably to the conclusion that it is Congress, and not this Court, that should determine whether a damages remedy is available under the circumstances presented here. Accordingly, Plaintiff's claims are not cognizable under *Bivens*, and the motion to dismiss by Defendant Carroll and Defendant DeVinney must be granted.

## **CONCLUSION**

For the foregoing reasons, Defendant Carroll and Defendant DeVinney's motion to

dismiss (Dkt. 39) is granted.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:  September 18, 2023
          Rochester, New York